## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JARED and AMY MYERS, on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. |
| LUMBER LIQUIDATORS, INC., a Delaware corporation, | ) ) ) | CLASS ACTION COMPLAINT |
| Defendant. | ) ) | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs, Jared Myers and Amy Myers ("Plaintiffs"), by and through undersigned counsel, on behalf of themselves and all other entities and persons similarly situated, sue Defendant Lumber Liquidators, Inc. ("Defendant"), a Delaware corporation, and for their Class Action Complaint allege, upon information and belief and based on the investigation to date of their counsel, as follows:

## I.      INTRODUCTION

1.      This is a class action asserting violations of the Magnuson-Moss Warranty Act, breaches of express and implied warranties, breach of contract, breach of the duty of good faith and fair dealing, negligence, negligent misrepresentation, fraudulent concealment, and unjust enrichment and seeking damages and declaratory relief in connection with the laminate wood flooring products marketed, advertised and sold by Defendant.

2.      Plaintiffs bring this class action on behalf of themselves and other similarly situated consumers who purchased laminate wood flooring from Defendant.

1

3.     This action arises out of Defendant's practice of systematically falsely warranting, advertising, and selling laminate wood flooring that fails to comply with relevant and applicable formaldehyde emissions standards, as well as its breaches of express and implied warranties with respect to these products.

4.     Defendant supervises and controls the manufacturing, and packages, distributes, markets and/or sells laminate wood flooring products to consumers throughout the United States. In particular, in contrast to its direct representations to the contrary, Defendant manufactures, sells and distributes laminate wood flooring products that emit and "off-gasses" excessive levels of formaldehyde, which is categorized as a known human carcinogen by the United States National Toxicology Program and the International Agency for Research on Cancer.

5.     Contrary to Defendant's repeated, detailed representations on its product labels, website and elsewhere that its flooring complies with strict formaldehyde standards, the lethal formaldehyde emissions from Defendant's laminate wood flooring products are, in fact, multiple times the maximum permissible limits set by those standards at the time of purchase.

6.     Defendant's actions with respect to its manufacturing, marketing and sale of laminate wood flooring containing excessive and/or dangerous levels of formaldehyde have caused Plaintiffs and other members of the Class to suffer direct financial harm.

7.     Plaintiffs do not assert claims in this action for personal injuries caused by formaldehyde exposure. Rather, Plaintiffs paid more for and/or otherwise would not have purchased Defendant's laminate wood flooring that failed to comply with Defendant's representations and warranties. Plaintiffs further assert claims individually and on behalf of the other members of the proposed Class for violations of the Magnuson-Moss Warranty Act, breaches of express and implied warranties, breach of contract, breach of the duty of good faith

2

and fair dealing, negligence, negligent misrepresentation, fraudulent concealment, and unjust enrichment.

## II.    JURISDICTION AND VENUE

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is complete diversity (Plaintiffs are citizens of Tennessee and Defendant is a Delaware corporation with its headquarters and principal place of business in Virginia), (ii) the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff class.

9.    Defendant conducts substantial business in Tennessee, including the sale and distribution of its laminate wood flooring products, and has sufficient contacts with Tennessee or otherwise intentionally availed itself of the laws and markets of Tennessee, so as to sustain this Court's jurisdiction over Defendant.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, *et seq.*, because a substantial part of the events or omissions giving rise to this claim occurred in the state of Tennessee.

## III.    PARTIES

11.    Plaintiffs, Jared Myers and Amy Myers, are and at all relevant times hereto were, citizens and residents of Tennessee. In or about June 2014, Plaintiffs purchased 12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring directly from Defendant, which was installed in their home. This flooring was manufactured in China. At the time of purchase, Defendant falsely represented and warranted the flooring to be compliant with strict formaldehyde standards. Plaintiffs relied on Defendant's misrepresentations and/or omissions

3

when deciding to purchase flooring and, as a result, paid more for this product than they would have and/or would not have purchased the product but for Defendant's deceptive conduct.

12.     Defendant, Lumber Liquidators, Inc., is a Delaware corporation with its headquarters and principal place of business in Virginia.

13.     Defendant is one of the largest specialty retailers of hardwood flooring in the United States. Defendant sells primarily to homeowners directly, or to contractors acting on behalf of homeowners, through its network of approximately 300 retail stores in 46 states. Defendants also provide customers sales over the Internet, which are then shipped to a retail store for pickup. Defendant has mills in, and buys many of its source wood flooring material from, China.

## IV.     FACTUAL BACKGROUND

14.     Defendant sells its products primarily to homeowners directly, or to contractors acting on behalf of homeowners, through its network of approximately 300 retail stores in 46 states. Consumers may also purchase Defendant's products online, and any purchases made over the Internet are shipped to Defendant's retail location of the consumer's choosing.

15.     Contrary to its representations to Plaintiffs and the other Class members, Defendant has knowingly and intentionally engaged in a scheme to manufacture, market, sell and distribute falsely advertised laminate wood flooring that emits excessively high levels of formaldehyde.

16.     The laminate wood flooring manufactured and packaged in China and marketed, distributed, advertised and sold by Defendant in the United States include the following products (the "Toxic Flooring"):

a.   8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

4

b. 8 mm Dream Home Nirvana French Oak Laminate Flooring;

c. 12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

d. 12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

e. 12 mm Dream Home St. James Oceanside Plank Laminate Flooring;

f. 12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

g. 12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

h. 12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

i. 12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

j. 12 mm Dream Home St. James Golden Acacia Laminate Flooring;

k. 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

l. 12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

m. 12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring (the product purchase by Plaintiffs Jared and Amy Myers);

n. 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

o. 12 mm Dream Home Kensington Manor Summer Retreat Teak Laminate Flooring;

p. 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

q. 12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

r. 12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

s. 12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

t. 12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

u. 12 mm Dream Home St. James African Mahogany Laminate Flooring;

5

v. 12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring; and

w. 15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring.

17. On information and belief, each of Defendant's laminate wood flooring products listed in paragraph 16 above are manufactured in China using a common formula, design and/or process.

18. On information and belief, each of Defendant's laminate wood flooring products listed in paragraph 16 above emit excessive and/or dangerous levels of formaldehyde.

**A.** **Formaldehyde.**

19. Formaldehyde is a naturally occurring chemical that can be synthesized and used in certain industrial processes.

20. Formaldehyde is classified as a volatile organic compound, which is a chemical that becomes a gas at room temperature. It is listed as a known human carcinogen by the National Toxicology Program and the International Agency for Research on Cancer and is associated with numerous other adverse medical conditions even in short term exposure, including asthma and rheumatoid arthritis. Risk of health problems from formaldehyde exposure is significantly greater for children.

21. Formaldehyde is the sort of toxic substance to which people may be exposed without knowing they are at risk. Day after day, week after week, month after month, Plaintiffs and Class members live in their homes, an enclosed place, while their flooring is emitting toxic, cancer causing fumes. As such, the laminate flooring Defendant sold Plaintiffs and other consumers poses great health risks.

22. According to the U.S. Occupational Safety & Health Administration ("OSHA"):

6

The concentration of formaldehyde that is immediately dangerous to life and health is 100 ppm. Concentrations above 50 ppm can cause severe pulmonary reactions within minutes. These include pulmonary edema, pneumonia, and bronchial irritation which can result in death. Concentrations above 5 ppm readily cause lower airway irritation characterized by cough, chest tightness and wheezing.

Long term exposure to formaldehyde has been shown to be associated with an increased risk of cancer of the nose and accessory sinuses, nasopharyngeal and oropharyngeal cancer, and lung cancer in humans.[1]

23.　　Formaldehyde has a pungent odor and irritates the respiratory tract. The most common symptoms of formaldehyde exposure are burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain and nausea. Due to the harmful effects of formaldehyde on human health, various laws have been enacted to reduce consumers' exposure to this toxin.

24.　　Laminate wood flooring can contain formaldehyde because formaldehyde is often used in the adhesive and resins used to make engineered wood floors. Formaldehyde can be released into the air (through a process called "off-gassing") from wood flooring materials.

25.　　According to the Consumer Product Safety Commission ("CPSC"), pressed-wood (i.e., hardwood, plywood, particleboard, and medium-density fiberboard ("MDF")) and wood-based products, especially those containing urea-formaldehyde (or "UF") resins, may be "a significant formaldehyde source."

26.　　On information and belief, many, if not all, of Defendant's laminate wood flooring products contain UF/urea-formaldehyde or other formaldehyde resins.

---

[1] Occupational Safety & Health Administration, Standard 1910.1048 App. C (Medical surveillance – Formaldehyde), https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=STANDARDS&p_id=10078 (last visited March 9, 2015).

27.     Chinese regulations governing formaldehyde in wood products are weak. As a result, wood sourced from China is not subject to the strict environmental regulations that would govern such products manufactured in the United States.

28.     The California Air Resources Board ("CARB") is a department of the California Environmental Protection Agency. CARB's mission is to promote and protect public health, welfare, and ecological resources through effective reduction of air pollutants while recognizing and considering effects on the economy. CARB oversees all air pollution control efforts in California to attain and maintain health-based air quality standards. Additionally, CARB mandates are typically the model for national standards. For example, the Environmental Protection Agency and the Department of Transportation coordinated their most recent round of proposed rules with CARB. CARB has served as the model for the federal standard in formaldehyde emissions as well.

29.     CARB promulgated the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products, California Code of Regulations, Title 17 § 93120-93120.12 (the "CARB Regulations"), in January 2009. The CARB regulations apply to a range of composite wood products, including flooring, hardwood plywood, particleboard and fiberboard. The CARB regulations (phase 2) dictate that certain wood products sold in the State of California must emit no more than 0.05 parts per million of formaldehyde as determined per relevant testing methods.

30.     In 2010, Congress passed and President Barack Obama signed into law the Formaldehyde Standards for Composite Wood Products Act, which adds a Title VI to the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2697, and establishes limits for formaldehyde emissions from composite wood products. The national emission standards in that law mirror the

8

CARB limit. On June 2013, the U.S. Environmental Protection Agency promulgated rules to implement those standards. *See* Formaldehyde Emissions Standards for Composite Wood Products, 78 Fed. Reg. 34820 (June 10, 2013) (to be codified at 40 C.F.R. Part 770).

**B.**    <u>Lumber Liquidator's Misrepresentations Regarding Its Laminate Wood Flooring Formaldehyde Emissions.</u>

31.    Despite unlawful levels of formaldehyde emissions from its laminate wood flooring products, Defendant's marketing materials, including Defendant's website, specifically represent to consumers that Defendant's Toxic Flooring comply with the formaldehyde emission regulations propounded by CARB:

> Lumber Liquidators' products are safe and meet the highest quality and environmental standards. That's why we sell these products, why we use them in our own homes and why we are a market leader. As consumers ourselves, we are committed to delivering safe and long-lasting products to our customers.
>
> Our commitment begins with meeting the most stringent environmental and quality standards. These standards ensure that our products are safe, meet all government requirements, and are approved by government-approved third-party validators.
>
> This commitment to quality and safety extends to everywhere we do business. We require that all of our suppliers comply with California's advanced environmental requirements, even for products sold outside California.
>
> **Does Lumber Liquidators comply with CARB regulations?** Yes. To comply with the CARB standards, applicable laminate and engineered flooring and accessories sold by Lumber Liquidators are purchased from manufacturers whose production methods have been certified by a Third Party Certifier approved by the State of California to meet the CARB standards; or from suppliers who source composite wood raw materials only from certified manufacturers. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their composite wood products conform to the specified emission limits. The Third Party

9

Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

**Initial Shipment Inspection/Test:** We test the initial shipment or first lot sent and confirm that the products comply with all requirements. Lumber Liquidators also sends samples from initial shipments to independent third-party testing labs to monitor compliance;

**What else is Lumber Liquidators doing to ensure health & safety?** Though CARB applies only to products sold in California, Lumber Liquidators requires all suppliers delivering products containing composite wood components to comply with CARB requirements regardless of whether we intend to sell the products in California or any other state or country. Although the U.S. Environmental Protection Agency has drafted national standards for composite wood products that are similar to the CARB standard, those standards have not yet been enacted. Until that time, Lumber Liquidators believes that applying the rigorous California standard throughout North America is the right thing to do.[2]

32.    In addition, on the product packaging of the laminate wood flooring products at issue in this case, Defendant affirmatively represents and warrants that the Toxic Flooring complies with CARB Phase 2 Formaldehyde standards. On information and belief, this statement is presented on all of Defendant's laminate wood flooring product packaging even though the flooring inside the packaging does not comply with CARB standards.

33.    Defendant also affirmatively represents that its products meet CARB standards *everywhere* it sells its products. Defendant explicitly tells customers that its "commitment to quality and safety extends to everywhere we do business. We require that all of our suppliers comply with California's advanced environmental requirements, even for products sold outside California."[3]

34.    Defendant's website also represents to consumers that Defendant requires its suppliers to follow a "Supplier Code of Conduct with Respect to Environmental and Social

---

[2] http://www.lumberliquidators.com/sustainability/health-and-safety/ (last visited March 9, 2015).
[3] http://www.lumberliquidators.com/sustainability/health-and-safety/ (last visited March 9, 2015).

Responsibility," and "represent and warrant that they are in full compliance with all applicable laws and regulations[.]"[4]

35.     Contrary to Defendant's repeated, detailed representations and warranties, however, its laminate wood flooring products are not what it purports to be. The Toxic Flooring off-gas formaldehyde at the time of purchase at levels that far exceed the standards propounded by CARB, resulting in harm to Plaintiffs and other Class members who purchased these products.

36.     On information and belief, at all times relevant to this action, Defendant has knowingly misrepresented its laminate wood flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from the Toxic Flooring.

37.     At the same time that Defendant represents in their public statements to consumers that the laminate wood flooring products it sells are sourced from mills whose production methods are CARB compliant, and that the products conform to CARB's specified formaldehyde emission limits, Defendant has acknowledged in statements made to the Securities and Exchange Commission that, "[w]hile our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, we do not control our suppliers. Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner. Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could expose ... expose us to legal risks as a result of our purchase of

---

[4]  http://www.lumberliquidators.com/assets/images/product_page/California_Supply_Chains_Act.pdf (last visited March 9, 2015).

11

product from non-compliant suppliers."[5] In the same SEC filing, however, Defendant admits that it oversees quality control in its mills in China: "We are able to set demanding specifications for product quality and our own quality control assurance teams are on-site at the mills, coordinating inspection and assurance procedures." Lumber Liquidators February 19, 2014 10-K to the United States Securities and Exchange Commission at p. 5. Despite their stated concern that their suppliers might not comply with environmental regulations, Defendant has failed to sufficiently exercise their acknowledged quality control over those suppliers to ensure that they comply with Defendant's express warranty to consumers that its products are CARB compliant.

38.　　On June 20, 2013, *Seeking Alpha*, a news website with millions of viewers, published a lengthy article documenting high formaldehyde levels in Chinese-made laminate flooring sold by Lumber Liquidators. The author of the article, Xuhua Zhou, retained a certified laboratory to test three samples of laminate flooring sold by Lumber Liquidators. Zhou's article states, "The tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits a staggering three and half times over the government mandated maximum emission level. The product is clearly not CARB compliant yet Lumber Liquidators tagged CARB compliance on the box."[6]

39.　　Nevertheless, Defendant continues to misrepresent that its laminate wood flooring products were CARB compliant when it knew that this was false, downplayed the formaldehyde off-gassing defect of the Toxic Flooring, and failed to properly investigate and inform customers regarding the formaldehyde emissions problems associated with its products.

---

[5] Lumber Liquidators February 19, 2014 10-K to the United States Securities and Exchange Commission at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127.

[6] Xuhua Zhou, *Illegal Products Could Spell Big Trouble At Lumber Liquidators*, SEEKING ALPHA (June 20, 2013, 2:33 PM ET), http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-at-lumber-liquidators (last visited March 9, 2015).

40.     Had Defendant adequately and fairly represented its products, Plaintiffs and other Class members would not have purchased these products and/or would have paid less money for them.

## V.     CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23, and case law thereunder on behalf of themselves and all others similarly situated, with the Class defined as follows:

> **Consumers nationwide who purchased Defendant's laminate wood flooring products that were (1) labeled as CARB compliant, but were not in fact, CARB compliant, and (2) sold to consumers in the United States at any time from January 1, 2011 through the date of judgment herein (the "Class").**

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and its subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

42.     Plaintiffs reserve the right to modify or amend the Class definition, as appropriate. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims, and because this case meets the requirements of Federal Rule of Civil Procedure 23.

43.     *Numerosity*: The Class is composed of thousands of persons geographically dispersed throughout the United States, the joinder of whom in one action is impractical. The precise number of Class members is in the exclusive control of Defendant and can be obtained through Defendant's sales records and other records and documents.

13

44. *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether Defendant's laminate wood flooring products emit excessive levels of formaldehyde.

45. Furthermore, other questions of law and fact common to the Class that exist to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

a. Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly label its products it sold to consumers;

b. Whether the products at issue were mislabeled as a matter of law and violated California CARB emissions standards and Formaldehyde Standards of Composite Wood Products in the TSCA;

c. Whether Defendant made unlawful and misleading toxicity representations and warranties with respect to its products sold to consumers;

d. Whether Defendant's advertisements and representations had the capacity to deceive reasonable consumers;

e. Whether Defendant breached its implied warranty of merchantability;

f. Whether Defendant breached its express warranties;

g. Whether Defendant was negligent in its labeling and advertising of the laminate wood flooring products;

h. Whether Defendant unlawfully sold the laminate wood flooring products in violation of the laws of Tennessee and/or the United States;

i. Whether Defendant's unlawful, unfair and deceptive practices harmed Plaintiffs and the Class;

j. Whether Plaintiffs and the Class have been damaged by the unlawful actions of the Defendant and the amount of damages to the Class;

k. Whether Defendant was unjustly enriched by its deceptive practices;

l. Whether punitive damages should be awarded; and

14

m. Whether Defendant should be enjoined from continuing the conduct complained of herein.

46.    *Typicality*: The claims of Plaintiffs are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been injured by the same wrongful practices of Defendant. Plaintiffs' claims arose from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

47.    *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions involving, *inter alia*, breach of warranties, product liability and product design defects.

48.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout Tennessee and the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VI.    **CAUSES OF ACTION**

15

## COUNT I
## BREACH OF CONTRACT

49. Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

50. In order to purchase Defendant's flooring, Plaintiffs and the Class entered into a contract with Defendant, whereby they would pay Defendant money and Defendant provided flooring that they represented as being of the highest quality, and which met the most stringent environmental standards.

51. Defendant materially breached this contract by failing to provide a product that was of high quality or meet the most stringent environmental standards, including the CARB Formaldehyde Standards.

52. Plaintiffs and the Class fully performed their portion of the contract by paying Defendant the listed sale price for the flooring.

53. As a direct and proximate result of Defendant's misconduct and breach of contract, Plaintiffs and the Class suffered harm in the form of monies paid. Plaintiffs and the Class did not receive the benefit of the bargain for which they contracted and paid money.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

54. Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

55. The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C. § 2301, *et seq.*, (the "Act") provides a private right of action to purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of a written warranty, express warranty and/or implied warranty.

56.    Plaintiffs and the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

57.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4)-(5).

54.    Defendant's flooring purchased separate from the initial construction of the structure constitutes a "consumer product" as defined in 15 U.S.C. § 2301(1).

58.    Defendant's express warranties and written affirmation regarding the nature of the flooring, including that the flooring was in compliance with CARB standards and all other applicable laws and regulations, constitute written warranties as defined in 15 U.S.C. § 2301(6).

59.    Defendant breached its warranties by:

    a.  Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

    b.  Manufacturing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

    c.  Refusing to honor the express warranty by refusing to properly repair or replace the Toxic Flooring.

60.    Plaintiffs and members of the Class relied upon Defendant's warranty when they purchased the Toxic Flooring, and the promises made in that warranty formed the basis of Plaintiff's bargain with Defendant. Defendant's breach of its express warranties deprived Plaintiffs and other Class members of the benefits of their bargains.

61.    Plaintiffs, on behalf of themselves and the other Class members, have notified Defendant of its breach of written warranties.

62.    Defendants have been given a reasonable opportunity by Plaintiffs and other Class members to cure such failures and to comply with the warranty yet have repeatedly failed to so.

63.     Plaintiffs and the other members of the Class have suffered damages as a direct and proximate result of Defendant's breach of warranty.

64.     Defendant's conduct damaged Plaintiffs and the other Class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## COUNT III
## BREACH OF EXPRESS WARRANTY

65.     Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

66.     Defendant's representations of fact and/or promises on its marketing material, website, product labels, and other material relating to its laminate flooring created express written warranties that the product would conform to Defendant's representation of fact and/or promises.

67.     The Defendant's description on the labeling of its laminate wood flooring products that it complied with CARB formaldehyde emission standards and all applicable laws and regulations became part of the basis of the bargain, creating express written warranties that the product purchased by Plaintiffs and the other Class members would conform to Defendant's description and specification. The Toxic Flooring purchased by Plaintiffs and Class members did not so conform.

68.     Plaintiffs and members of the Class reasonably relied upon Defendant's express written representations.

69.     Defendant breached its warranties by:

   a.   Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

18

b. Manufacturing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

c. Refusing to honor the express warranty by refusing to properly repair or replace the Toxic Flooring.

70. Defendant engaged in a systematic scheme of offering the Toxic Flooring for sale to Plaintiffs and members of the class by way of, *inter alia*, false and misleading product packaging and labeling.

71. Plaintiffs and the Class were the intended beneficiaries of such representations and warranties.

72. As a result of the foregoing, Plaintiffs and other members of the Class have suffered significant damages, in that the value of the produce they purchased was less than warranted by Defendants. Plaintiffs and members of the Class have also suffered damages in the diminution in value of their home arising from the emission of formaldehyde into the home.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

73. Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

74. At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be fit for the ordinary purpose for which such products are used and that the product pass without objection in the trade for the contract description.

75. Implied in the purchase of Defendant's laminate wood flooring by Plaintiffs and members of the Class is the warranty that the purchased products are legal and can be lawfully sold and possessed.

76. Defendant reasonably knew or should have known that its laminate wood flooring was unlawful for sale pursuant to The Toxic Substance Control Act, 15 U.S.C. § 2601, *et seq*.

77. When Defendant sold these products to Plaintiffs and members of the Class, they impliedly warranted that the products were legal and could be lawfully possessed and/or sold and therefore, merchantable.

78. No reasonable consumer would knowingly purchase a product that is illegal to own or possess, thus Plaintiffs and members of the Class relied on the skill and judgment of Defendant in purchasing the Toxic Flooring.

79. The purchased Toxic Flooring is unfit for the ordinary purpose for which it was intended, and Defendants breached its implied warranties by selling the Toxic Flooring to Plaintiffs and members of the Class.

80. In fact, Defendant's laminate wood flooring products are illegal, mislabeled, and economically worthless.

81. As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal and unsellable products.

82. By reason of the foregoing, Plaintiffs and members of the Class were damaged at least in the amount they paid for the Toxic Flooring. Plaintiffs and members of the Class have also suffered damages in the diminution in value of their home arising from the emission of formaldehyde into the home.

**COUNT V**
**BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

83. Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

84.     In making representations of fact to Plaintiffs and the other Class members about the laminate wood flooring, Defendant failed to accurately label or advertise its Toxic Flooring and violated its duty to disclose the material facts alleged above. Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendant.

85.     Plaintiffs and the other Class members, as a direct and proximate result of Defendant's breaches of its duty, reasonably relied upon such representations to their detriment. By reason thereof, Plaintiffs and other members of the Class have suffered damages.

## COUNT VI
## NEGLIGENCE

86.     Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

87.     Defendant had a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply and/or distribution of the laminate wood flooring, including the duty to assure the product is of the quality and character promoted.

88.     Defendant was negligent in the design, manufacture, testing, advertising, marketing, promoting, supply and sale of its laminate wood flooring in one or more of the following ways:

  a. Misleading Plaintiffs and members of the Class by suggesting that the flooring met CARB and other "stringent" environmental and quality standards;

  b. Negligently designing laminate flooring in a way that it knew or should have known contained excessive and/or dangerous levels of formaldehyde;

  c. Recklessly, falsely, and/or deceptively representing or knowingly omitting, suppressing or concealing material facts regarding the quality of its flooring, including the fact that it contained excessive and/or dangerous levels of formaldehyde;

d. Acting carelessly, negligently, grossly negligent, recklessly, and with willful and wanton disregard for Plaintiffs' and Class members' rights and well-being.

89.     As alleged above, Plaintiffs and members of the Class were injured by Defendant's unlawful actions and are entitled to recover an amount to be determined at trial due to the injuries and loss they suffered as a result of Defendant's negligence.

90.     Despite the fact that Defendant knew or should have known that the laminate wood flooring had excessive and/or dangerous levels of formaldehyde, Defendant continued to market and sell the Toxic Flooring to consumers, including Plaintiffs and Class members.

91.     Defendant knew that consumers, including Plaintiffs and members of the Class, would suffer reasonably foreseeable injuries, including property damage, personal injury, emotional distress and unreasonable stress as a result of its failure to exercise reasonable care.

92.     Had Defendant told Plaintiffs and members of the Class it sold a defective product, Plaintiffs and Class members would never have purchased the laminate flooring, and would not have suffered the injuries listed above.

93.     As a direct and proximate result of Defendant's negligence, misrepresentations and recklessness, Plaintiffs and Class members have suffered significant damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

94.     Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

95.     Defendant made misrepresentations of material fact when it represented that its laminate wood flooring was of the highest quality and met the most stringent environmental standards, including the CARB Standard for formaldehyde.

22

96. Upon information and belief, Defendant had no reasonable ground for believing that representation to be true, as Defendant alone knew its laminate wood flooring did not possess these characteristics. Defendant knew or should have known that its products contained excessive and/or dangerous levels of formaldehyde.

97. Defendant, as alleged above, made that representation with the intent to induce Plaintiffs and the Class members' reliance on the fact misrepresented, by convincing them that Defendant's laminate wood flooring did not contain high, excessive and/or dangerous levels of formaldehyde.

98. Because only Defendant knew exactly how much formaldehyde was in its laminate wood flooring, Plaintiffs and members of the Class relied on Defendant's negligent misrepresentations when purchasing the laminate wood flooring.

99. As a result of Defendant's misrepresentation and Plaintiffs and Class members' justifiable reliance on it, Plaintiffs and Class members have suffered damages.

## COUNT VIII
## UNJUST ENRICHMENT

100. Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

101. As a result of Defendant's conduct as described herein, Defendant was enriched at the expense of Plaintiffs and the Class through the payment of the purchase price for the laminate wood flooring.

102. Defendant realized this benefit from Plaintiffs and other members of the Class, and accepted and retained the non-gratuitous benefits conferred by Plaintiffs and Class members,

who without knowledge that the laminate wood flooring contained excessive and/or dangerous levels of formaldehyde, paid a higher price for the Toxic Flooring than it was worth.

103. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from the Plaintiffs and the Class.

104. Plaintiffs and other Class members are entitled to restitution in an amount to be determined at trial.

## COUNT IX
## FRAUDULENT CONCEALMENT

105. Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

106. At all times mentioned herein, Defendant, through its experience and knowledge, was in a position of superiority to Plaintiffs and class Members and as such had the duty and obligation to disclose to Plaintiffs and Class members the true facts and its knowledge that its laminate wood flooring contained excessive and/or dangerous levels of formaldehyde, and otherwise were not as warranted and represented by Defendant. Defendant made the affirmative representations as set forth in this Complaint to Plaintiffs, the Class, and the general public prior to (and after) the date Plaintiffs and Class members purchased the Toxic Flooring, while at the same time concealing its knowledge about the excessive and/or dangerously high formaldehyde emission levels. All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

107. The material facts concealed or not disclosed by Defendant to Plaintiffs and Class members are material facts in that a reasonable person would have considered those facts to be important in deciding whether or not to purchase Defendant's laminate wood flooring.

24

108. At all times mentioned herein, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs and with the intent to defraud as herein alleged.

109. At all times mentioned herein, Plaintiffs and members of the Class reasonably relied on Defendant to disclose those material facts set forth above. If Defendant had disclosed the above facts to Plaintiffs and the Class and had they been aware of said facts, they would have either negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing a different flooring product.

110. Defendant continued to conceal the excessive and/or dangerous levels of formaldehyde in its laminate wood flooring even after members of the Class began to report problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem.

111. As a result of the previous and continued concealment or suppression of the facts set forth above, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

## COUNT X
## DECLARATORY RELIEF

112. Plaintiffs repeat and re-allege each and every allegation contained above as if it were fully set forth herein.

113. Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

114. Plaintiffs seek a declaration that:

    a. Defendant's laminate wood flooring products have a defect which result in unsafe levels of formaldehyde emissions; and

b. Defendant knew of the defect in its laminate wood flooring products and that the limitation contained in the warranties are unenforceable;

c. Defendant shall re-audit and reassess all prior warranty claims on its laminate wood flooring products, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

d. Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require Defendant to inspect, upon request, a Class member's home to determine whether their laminate wood flooring has unsafe levels of formaldehyde emissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Jared Myers and Amy Myers, on behalf of themselves and all other similarly situated, pray for a judgment against Defendant as follows:

A. Enter an Order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the named Class Representatives of the Class, and designating the undersigned as Class Counsel;

B. Declare the Defendant is financially responsible for notifying all Class members of the problems with the laminate wood flooring at issue in this case;

C. Enter an Order enjoining Defendant from further deceptive advertising, marketing, distribution, and sales practices with respect to its laminate wood flooring, and requiring Defendants to repair and/or replace Plaintiffs' and Class Members' laminate wood flooring;

D. Enter and award in favor of Plaintiffs and the Class that includes compensatory, consequential, exemplary or punitive damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

E.    Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from sale of its laminate wood flooring, or order Defendant to make full restitution to Plaintiffs and members of the Class;

F.    Enter an award of attorneys' fees and costs; as allowed by law;

G.    Enter an award of pre-judgment and post-judgment interested, as provided by law;

H.    Grant Plaintiffs and the Class leave to amend this Class Action Complaint to conform to the evidence produced at trial; and

I.    Grant such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.


Dated: March 13, 2015


Respectfully submitted,


James G. Stranch, III, BPR No. 2542
J. Gerard Stranch, IV, BPR No. 23045
BRANSTETTER, STRANCH & JENNINGS,
PLLC
227 Second Avenue North, Fourth Floor
Nashville, TN 37201
Telephone: (877) 369-0267
Facsimile:  (615) 255-5419
jims@bsjfirm.com
gerards@bsjfirm.com

/s/ Jayne Conroy
Jayne Conroy
Paul Hanly
Andrea Bierstein
Simmons Hanly Conroy, LLC
One Court Street
Alton, Illinois 62002
Tel: 877-438-0896
Fax: 618-259-2251
Email: jconroy@simmonsfirm.com
      phanly@simmonsfirm.com
      abierstein@simmonsfirm.com


/s/ Christopher M. Ellis
Christopher M. Ellis, ARDC No. 6274872
Shane M. Mendenhall, ARDC No. 6297182
Bolen Robinson & Ellis, LLP
202 S Franklin St, 2nd Floor
Decatur, Illinois 62523
Tel: 217-429-4296
Fax: 217-329-0034
Email: cellis@brelaw.com
      smendenhall@brelaw.com

**Attorneys for Plaintiffs**